NORTHROP'S EX'RS v. RASNER *et al.*

*(Circuit Court of Appeals, Third Circuit.* August 16, 1892.)

1. PATENTS FOR INVENTIONS—LIMITATION OF CLAIMS—PRIOR ART—METALLIC CEILINGS.

Letters patent No. 330,916, issued November 24, 1885, to Albert Northrop, for an improvement in metallic ceilings, if valid at all, must, in view of the prior state of the art, be limited to a ceiling made of panels, in which the chief characteristics are (1) the formation on two or more sides of the panels by means of molded edges which fit into each other, of a channel along which leakage water may flow and be discharged at orifices made by cutting away the corners of the panels, the orifices being concealed by rosettes so constructed as to aid in discharging the water; and (2) the widening of alternate sides of each panel into flanged edges, which lie loosely upon each other, so as to allow expansion and contraction by heat and cold. 48 Fed. Rep. 449, affirmed.

2. SAME—INFRINGEMENT.

The patent is therefore not infringed by ceilings made of metallic panels generally having partially raised surfaces surrounded by moldings gradually flattening out into flat edges, which are nailed rigidly to the furring strips, such moldings forming no continuous channel for the discharge of water, and each panel having rosettes at the corners, which serve the purpose of ornaments only. 48 Fed. Rep. 449, affirmed.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

In Equity. Suit by the executors of Albert Northrop against Rasner & Dinger for infringement of patent. The circuit court sustained the patent, but held that it must be strictly construed, and that defendants did not infringe it, and therefore dismissed the bill. 48 Fed. Rep. 449. Complainants appeal. Affirmed.

*W. Bakewell & Sons,* for appellants.

*D. F. Patterson,* for appellees.

Before ACHESON and DALLAS, Circuit Judges, and GREEN, District Judge.

GREEN, District Judge. The bill of complaint in this cause alleges infringement of letters patent No. 330,916, which were granted to the complainants' testator, Albert Northrop, November 24, 1885, for an improvement in metallic ceilings. The object of the invention, as declared by the inventor, was to provide a sectional metallic ceiling of such construction that it should be of small initial cost in its manufacture; that it might be readily applied; that it would present a neat and finished appearance; and, further, that it would provide for the escape of any water that might flow upon the upper surface of the ceiling by reason of a leaky roof or defective water pipe in the ceiling, or other cause. With these objects in view, the inventor declared that his invention consisted in certain features of construction and relative arrangement and combination of parts, as he set forth and described in the specifications of the letters patent. The ceiling which it was intended to protect by these letters patent is composed of a series of panels, joined together. Each panel is constructed with a molding on each one of its sides, which is so curved as to form a channel. As the moldings are counterparts of each other, the molding on the edge of one panel will fit within the

molding on the adjacent edge of the adjoining panel. At the corners of the panels the edge of the molding is cut away, so that, when the panels are put in position upon the ceiling, an opening is formed at the junction, which serves as an outlet for any water which may leak upon the upper part of the ceiling. These openings are hidden by rosettes of metal which cover and conceal them, but do not interfere with the discharge of leakage water. The panel itself is secured in place either directly to the joists, or to furring strips, by fastenings passing through the curved moldings or channels. When the panels are properly put together, the curved moldings form a continuous channel or trough, through which the leakage of the roof above will collect and pass off at the openings concealed by the rosettes, without in any wise affecting the ceiling itself. A somewhat different form of panel is also described in the specifications, having the curved molding upon one end, and one side only; upon the opposite end and side there being substituted a turned-down flange, which, when the panels are brought together in use, will be received into and lie loosely upon the curved molding of the adjacent panel, and by this means any expansion or contraction of the metal is provided for, without in any wise disturbing the construction of the ceiling.

The complainants allege that the defendants are constructing panels and ceilings which are direct infringements of the 1st, 5th, and 6th claims of the letters patent. Those claims are as follows:

"(1) A metallic ceiling consisting of panels, each having a curved or channeled molding on its four sides, the moldings being cut away at the corners of the panels, and rosettes for covering or concealing said cut-away portions, substantially as set forth." "(5) A metallic ceiling consisting of panels having their sides (two or more) provided with channel moldings, the corners of the panels being cut away, substantially as set forth. (6) A metallic ceiling consisting of panels, each having a curved or channeled molding on two or more of its sides, the panels being cut away at the corners, and rosettes for covering and concealing said cut-away portions, substantially as set forth."

In reply to this charge, the defendants interpose two defenses: *First*, that the patent of the complainants is invalid for lack of invention; and, *secondly*, that if the invention of the complainants does show patentable novelty, the ceilings constructed by them do not in any degree infringe.

The learned judge who heard this cause in the court below held that, notwithstanding the prior state of art, this patent did show invention, and that the presumption of validity in its favor, arising from the grant of the letters patent, had not been overcome by the proofs on the part of the defendants. The defendants, upon this part of their case, relied upon letters patent to Hughes, No. 103,887, dated June 7, 1870; letters patent to Sanderson, No. 120,900, dated November 4, 1871; letters patent to Adler, No. 158,881, dated January 19, 1875; and especially upon the ceiling at the courthouse at Carlinsville, Ill., which had been constructed years before Northrop applied for the patent now in suit. It cannot be denied that the primary impression made by these proofs of

the prior state of the art is somewhat at variance with the conclusion reached by the learned judge in the court below. Certainly, as it seems to us, they strongly lean against the finding of patentable invention in the complainant's panels or his paneled ceiling. That the panels he described, and the ceiling made by him, with them, are in some degree different from the metallic roofing described in the Hughes and Sanderson patents, and from the ceiling in the Adler patent, as well as from the ceiling of the Carlinsville courthouse, is very true; yet it is difficult to assert that the substantial and material parts of the complainant's alleged invention are not practically described or shown in one or the other.

But it is not necessary to test this defense by a close analysis of the state of the art prior to Northrop's invention. Assuming that the court below was justified in its finding that patentable invention was present in the complainant's paneled ceilings, it is quite clear that the admitted state of the art compels a strict construction of the claims of this patent which are said to be infringed; and, when so construed, we fully agree with the court below that the defendants are not guilty of infringement in the manufacture of panels and ceilings which they confessedly construct. It is quite true that the defendants made use of panels of metal, in the construction of their ceilings, which are joined together, and then firmly fastened to the supporting joists or furring strips. It is quite true that at some distance from the edges of these panels are raised ornamentations produced by stamping, which might be called "moldings." It is quite true that, for further ornamentation, metallic rosettes are fastened to corners of the panels when in place. But all this does not constitute an infringement of the patent in this case, as we must construe it. This patent is to be so construed, having in view the state of the art, that it may cover a ceiling made of metallic panels, in which the chief and necessary characteristics shall be two: *First*, the formation by means of molded edges, on two or four sides of the panels, of a channel, through and along which leakage water may flow and be discharged at various prepared orifices or openings, which are hidden and concealed from the observer by metallic rosettes, so fitted and placed that they do not hinder, but rather assist, in such discharge; and, *secondly*, the widening of alternate sides of the panels into flat or flanged edges, which, in construction of the ceilings, lie loosely upon each other, in such a manner that they readily move in response to action of heat and cold, thus providing for supposed necessary expansion and contraction of the metal. If there be invention in this patent, it is found in these two forward steps in the progress of the art to which it belongs. They are the absolute and necessary characteristics of the complainant's invention. The difficulties arising from the disposition of leakage water falling upon the upper surface of metallic ceilings, and the supposed necessity for providing for the expansion and contraction, under changes of temperature, of the metallic base of the ceiling, were the problems which taxed the complainant's skill and inventive genius, and these are the only ones which he claims to have solved.

Now, as stated before, the ceiling constructed by the defendants is made of metallic panels. These panels are stamped into such form as may be desired for any particular ceiling. They generally have a partially raised surface, surrounded by a molding gradually widening out into flat edges, called by some of the witnesses "stiles." In constructing a ceiling, these metallic panels are nailed to furring strips, or directly to joists, the flat edges overlapping in such a way that the line of joinder is concealed. Rosettes are firmly secured or otherwise fastened to each corner of a panel, but play the part of ornament only. They are of no other practicable or possible use. The edges of the panel do not form a continuous, or indeed any, channel or trough for the flow of leakage water. No special provision is made for such flow by the defendants in their work. The edges of the panels, instead of being curved so as to form a channel, are perfectly flat, and lie close to the furring strip or joist. The distinguishing characteristic of a channel, as a part of the panel, is wholly wanting in the defendants' structure. The raised surface of the panel, which the complainant insists is the equivalent of his curved molding, has no other office than to aid in presenting the special design stamped upon the panel itself. Possibly leakage water would lie in these indentations of the defendants' panel, if it once made its way thither, but there it would remain until it evaporated; at least, no provision is made by channels or openings for its discharge. Clearly there is no infringement of the complainant's invention in this respect.

Nor is there any infringement, on the other hand, in respect to the provisions made by complainant in his ceilings for regulating alleged contraction and expansion of the metal. The defendants' panels make, when nailed or secured to the joists, a rigid ceiling. No provision is made for their moving or sliding on each other as they may expand or contract. The defendants evidently found by experience that such contraction or expansion, whatever it might amount to, could be treated as wholly negligible, and disregarded it. It cannot be pretended that there is any infringement in this respect. The result is that the judgment of the court below is affirmed, with costs.